**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DANILO MERA*, on behalf of himself, FLSA*
*Collective Plaintiffs, and the Class,*

       Plaintiff,

   v.

KYMA HUDSON LLC,
  d/b/a KYMA,
KYMA NYC LLC,
  d/b/a KYMA,
OLD NORTHERN BOULEVARD
RESTAURANT LLC,
  d/b/a KYMA,
217 W85 LLC,
  d/b/a ELEA,
MERKOURIOS ANGELIADES,
and STEVE TENEDIOS,

      Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, DANILO MERA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorney, files this Class and Collective Action Complaint against KYMA HUDSON LLC, d/b/a KYMA, KYMA NYC LLC, d/b/a KYMA, OLD NORTHERN BOULEVARD RESTAURANT LLC, d/b/a KYMA, 217 W85 LLC, d/b/a ELEA, (collectively the "Corporate Defendants"), MERKOURIOS ANGELIADES and STEVE TENEDIOS ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, (2) unpaid wages, including overtime, due to timeshaving, (3) unpaid wages, including overtime, due to invalid tip credit, (4) improperly deducted meal credits, (5) illegally retaining gratuities, (6) liquidated damages, and (7) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, (2) unpaid wages, including overtime, due to timeshaving, (3) unpaid wages, including overtime, due to invalid tip credit, (4) improperly deducted meal credits, (5) illegally retaining gratuities, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Furthermore, Plaintiff alleges that pursuant to the New York State Human Rights Law, New York Executive Law §296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Plaintiff was deprived of his statutory rights as a result of Defendants' discriminatory employment practices based on Plaintiff's sexual orientation and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337, and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.    Plaintiff MERA is a resident of Essex County, New Jersey.

7.    Defendants collectively own and operate four (4) Greek taverna inspired restaurants in New York located at:

a) Kyma Flatiron: 15 W 18th Street, New York, NY 10011;

b) Kyma Hudson Yards: 445 W, 35th Street, New York, NY 10001;

c) Kyma Roslyn: 1446 Old Northern Blvd, Roslyn, NY 11576; and

d) Elea: 217 W 85th St, New York, NY 10024 (collectively, the "Restaurants")

8.    Defendants operate the Restaurants as a single integrated enterprise under the common control of Defendants. All the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

a) Specifically, Individual Defendant MERKOURIOS ANGELIADES owns and operates all the Restaurants as it is asserted on Defendants registrations, licenses, public reports, and news articles. *See* **Exhibit A**.

b) Similarly, all the Restaurants are held out to the public as "sibling" or "sister" entities. *See* **Exhibit B**.

c) The Restaurants all serve Greek and Mediterranean cuisines, have similar menus, serve similar goods, and have the same suppliers. **Exhibit C**.

d)  Likewise, all the Restaurants share and utilize similar décor and ambience inspired by traditional Greek taverna restaurants. *See* **Exhibit D**.

e) All the Restaurants have a centralized Human Resources that deals with hiring, firing, and administering all the Restaurants' work force.

f)   Moreover, Defendants' employees are exchanged, rotated, and required to work at each Restaurant location on an as needed basis.

9.      Corporate Defendant KYMA HUDSON LLC., d/b/a KYMA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 445 West 35th Street, New York, NY 10001, and an address for service of process located at 315 Madison Avenue, 15th Floor, New York, NY 10017.

10.      Corporate Defendant KYMA NYC LLC., d/b/a KYMA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 15 West 18th Street, New York, NY 10011.

11.      Corporate Defendant OLD NORTHERN BOULEVARD RESTAURANT LLC., d/b/a KYMA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 1446 Old Northern Blvd, Roslyn, NY 11576.

12.      Corporate Defendant 217 W85 LLC, d/b/a ELEA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 217 West 85th St, New York, NY 10024 and an address for service of process located at 5-44 47th Ave, Third Floor, Long Island City, NY 11101.

13.      Individual Defendant MERKOURIOS ANGELIADES is the owner and principal of Corporate Defendant. MERKOURIOS ANGELIADES exercises operational as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant MERKOURIOS ANGELIADES exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees

including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant MERKOURIOS ANGELIADES directly regarding the terms of employment.

14.     Individual Defendant STEVE TENEDIOS is the owner and principal of Corporate Defendant. STEVE TENEDIOS exercises operational as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant STEVE TENEDIOS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant STEVE TENEDIOS directly regarding the terms of employment.

15.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

16.     Plaintiff brings claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, hostesses, bussers, food runners, bartenders, barbacks, and waiters) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and

refusal to pay Plaintiff MERA and FLSA Collective Plaintiffs (i) their proper wages, including overtime, (ii) their proper wages, including overtime, due to timeshaving and (iii) their proper wages due to improperly deducted meal credit. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs. A subclass of FLSA Collective Plaintiffs has a claim for (i) unpaid wages, including overtime, due to an invalid tip credit and (ii) illegally retained gratuities. The claims of Plaintiff MERA stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

19.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including, but not limited to, cooks, food preparers, dishwashers, porters, hostesses, bussers, food runners, bartenders, barbacks, and waiters)  employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members").

20.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff MERA is a member of the Class and the Tipped Subclass

22.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, (ii) failing to pay proper wages, including overtime, due to timeshaving, (iii) failing to pay proper wages due to improperly deducted meal credits, (iv) failing to provide Class Members with proper wage statements, and (v) failing to provide Class members with notice of wage rate upon hiring and as required thereafter pursuant to the New York Labor Law.

23.     With regard to the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under the NYLL. Plaintiff MERA and the other members of the Tipped Subclass suffered from Defendants' utilization of an invalid tip credit because Defendants: (i) failed to properly provide written tip credit notice at hiring; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours

exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme whereby managers and non-tipped employees participated; (iv) illegally retained tips; (v) failed to accurately keep track of daily tips earned and maintain records thereof; and (vi) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period.

24.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

25.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented Plaintiffs in wage and hour cases.

26.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each individual Class members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The

adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual Class members, establishing incompatible standards of conduct for Defendant, resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

  a. Whether Defendants employed Plaintiff and the Class within the meaning of New York law;

  b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class member properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiff and the Class members for their work;

d.  Whether Defendants properly notified Plaintiff and the Class of their hourly rates;

e.  Whether Defendants operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked;

f.  Whether Defendants properly provided written notice to all tipped employees, in their native language, that Defendants were taking a tip credit;

g.  Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

h.  Whether Defendants instituted an improper tip pool whereby managers and non-tipped employees participated;

i.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

j.  Whether Defendants properly satisfied New York State's nutritional requirements containing all four (4) food groups for meals provided to employees;

k.  Whether the meals provided by Defendants exceed the meals "reasonable cost";

l.  Whether employees actually consumed the credited meals provided by Defendants;

m.  Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws;

n.   Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the NYLL.

## STATEMENT OF FACTS

*Wage and Hour Allegations*

29.   In or around July 2021, Plaintiff DANILO MERA was hired to work as a Busboy for Defendants' "Kyma Hudson Yards" restaurant located at 445 West 35th Street, New York, NY 10001. Around January 2022, Plaintiff's position was changed to Runner, and he continued working for Defendants until March 18, 2022.

30.   At the beginning of his employment, Defendants trained Plaintiff at their "Kyma Flatiron" restaurant located at 15 W 18th Street, New York, NY 10011. It was and is a common practice that Defendants train new employees at one location and then transfer and direct FLSA Collective Plaintiffs and Class members to perform work at other Restaurants on an as needed basis.

31.   Throughout his employment, Defendants compensated Plaintiff at the tipped credit minimum wage rate of $10 per hour.

32.   Throughout his employment, Plaintiff was scheduled to work five (5) days per week from 3:00 p.m. to 12:00 a.m. for a total of forty-five (45) hours per week. On occasion, Plaintiff was required to continue working after his scheduled shift ended. Likewise, FLSA Collective Plaintiffs and Class members worked similar hours.

33.   Throughout his employment, Plaintiff was not compensated for his meal breaks as he was required to work through them due to how busy the restaurant was. Similarly, FLSA

Collective Plaintiffs and Class Members were similarly required to work through their meal breaks and not compensated for that time.

34.     Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[1], whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[2], and whether employees actually consumed the credited meals or not. Defendants' provided meals consisted only of chicken and pasta, with no drinks such as coffee, tea, or sodas, and failed to satisfy the New York State's nutritional requirements. FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages.

35.     Throughout his employment, Plaintiff was subject to an invalid tip pool wherein managers and non-tipped employees such as hosts participated. The subclass of FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants utilization of an invalid tip pool wherein managers and non-tipped employees such as hosts participated

36.     Defendants failed to compensate Plaintiff and employees with their proper wages, including overtime, due to Defendants incorrect method of calculating employees' hours worked. Whenever Plaintiff worked longer than ten (10) hours, Defendants failed to compensate Plaintiff the equivalent of one worked hour, as Defendants improperly paid employees the spread of hours premium instead of the worked hour plus an additional hour at the minimum wage. As it can be seen on the paystubs attached hereto as **Exhibit E**, when Plaintiff worked a shift longer than ten (10) hours, Defendants compensated Plaintiff with the Spread of Hours premium as a replacement

---

[1] 29 C.F.R. § 531.3
[2] NYCRR § 146-3.7

for a worked hour, instead of a premium in addition to Plaintiff's worked hours, as it is supposed to be. For example, the paystub corresponding to the week of 02/14/2022 – 02/20/2022 shows that Plaintiff worked that week a total of 51.02 hours with one shift that exceeded ten (10) hours in duration. Thus, for that week, Plaintiff was supposed to be compensated for 51.02 hours (40 at a regular wage, 11.02 overtime) plus one instance of spread of hours premium. Instead, Defendants compensated Plaintiff for 50.02 hours and the spread of hours premium, resulting in an unpaid overtime hour.  Similarly, Class members were not compensated for all their worked hours.

37.     Plaintiff, the subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, the subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA and NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or 20% of the total hours worked each shift; (iii) implemented an invalid tip pooling scheme in which managers and non-tipped employees participated in the tip pool; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

38.     Specifically, Plaintiff, the subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were required to engage more than two hours or 20% of his working time performing non-tipped related activities such as repairing furniture, cleaning and mopping floors, sweeping the sidewalks, polishing the furniture, organizing plates and silverware, among other duties. Even though Defendants required Plaintiff, the subclass of FLSA Collective Plaintiffs and the Tipped Subclass employees to engage in non-tipped activities in excess of two hours or 20% of the total

hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

39.     Throughout his employment, Plaintiff was subject to an invalid tip pool wherein managers and non-tipped employees such as hosts participated. The subclass of FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants utilization of an invalid tip pool wherein managers and non-tipped employees such as hosts participated

40.     In addition, Defendants would frequently fail to provide Plaintiff with any tips. As it can be seen on **Exhibit F**, Defendants compensated Plaintiff on a tip credit basis of $10 per hour and failed to compensate Plaintiff with tips. As an example, on the week of 10/18/2021 – 10/24/21, Plaintiff worked 15.87 hours on a tip credit basis and Defendants paid Plaintiff no tips. Thus, during that week, Defendants retained 100% of the tips earned and therefore, Plaintiff's regular hourly rate improperly fell below the minimum wage. Defendants similarly kept and failed to distribute the tips among a subclass of FLSA Collective Plaintiffs and Tipped Subclass members.

41.     Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and NYCRR § 146-1.9 for each shift worked, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[3], whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups[4], and whether Plaintiff actually consumed the credited meals or not. Defendants' provided meals consisted only of chicken and pasta, with no drinks such as coffee, tea, or sodas, and failed to satisfy the New York State's nutritional requirements. FLSA Collective Plaintiffs and Class Members similarly had meal credits improperly deducted from their wages.

---

[3] 29 C.F.R. § 531.3
[4] NYCRR § 146-3.7

42.     Plaintiff and Class members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they failed to provide proper wage statements due to an invalid tip credit, unpaid wages, including overtime, illegally retained gratuities, and invalid meal credit deductions for each payment period. In other words, Plaintiff and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

43.     Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and at all changes of payrate thereafter. Plaintiff did not receive proper wage notices either upon being hired or upon every change of pay rate in violation of the NYLL.

44.     Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass members. Defendants were not entitled to claim any tip credits under the NYLL.

45.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class members their proper wages, including overtime.

46.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class members their proper wages, including overtime, due to timeshaving.

47.     Defendants knowingly and willfully operated their business with a policy of improperly deducting meal credits from Plaintiff, FLSA Collective Plaintiffs and the Class members, in violation of the FLSA and the NYLL.

48.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

*Discrimination Allegations*

50.     In addition, Plaintiff suffered from Defendants' discriminatory practices and the hostile work environment fostered by Defendants, as described below:

   a. Plaintiff MERA is a homosexual male;

   b. After Plaintiff was transferred to Defendants' "Kyma Hudson Yards" location, Plaintiff suffered a constant barrage of discriminatory abuse because of his sexual orientation;

   c. Since Plaintiff DANILO MERA's first day at "Kyma Hudson Yards", whenever Plaintiff entered the kitchen, the Executive Chef George would say aloud "I don't want faggots running food in this Restaurant!" and "I don't want this faggot in my kitchen!";

   d. Similarly, whenever Plaintiff was in the same room with the Executive Chef, he would loudly announce to other employees "That guy is a faggot, did you know he is a faggot?"

   e. Sous Chef "Dano" would similarly call Plaintiff "faggot" or "maricon" (which is a derogatory term for homosexuals in Spanish) anytime he spoke to him.

   f. Similarly, the Sous Chef "Dano" would loudly ask "that guy is a faggot right?" every time Plaintiff walked past him.

16

g.  In addition, the Executive Chef encouraged other workers to use homophobic slurs against Plaintiff. When the Executive Chef called Plaintiff homophobic slurs or names, other employees felt encourage to verbally abuse Plaintiff;

h.  Plaintiff, as a busser and runner, had to constantly get in the kitchen. Every time that Plaintiff had to perform his job, Plaintiff had to listen the Executive Chef's and Sous Chef's homophobic rants.

i.  Plaintiff constantly told Executive Chef George and Sous Chef "Dano" to stop using such homophobic, bigoted, and offensive language, but nothing would ever happen as a result of his complaints.

j.  Individual Defendant MERKOURIOS ANGELIADES was aware of this discriminative and humiliating practice. After the Executive Chef George complained to Individual Defendant MERKOURIOS ANGELIADES that Plaintiff is homosexual and he doesn't want homosexuals in his kitchen, Individual Defendant answered to the Chef "don't worry, he is not gay", to which the Executive Chef asked Individual Defendant again "are you sure Danilo is not a faggot? I don't want faggots working here".

k.  Individual Defendant did not reprimand nor request that the Executive Chef George and Sous Chef "Dano" stop with the biased and discriminative behavior.

l.  Plaintiff was the only homosexual employee at all of Defendants' location. It is of Plaintiff's understanding, based on the Executive Chef's comments, that Defendants do not hire homosexual employees based on their sexual orientation.

m.  On March 18, 2022, unable to continue working due to the continued harassment and abuse, Plaintiff was constructively terminated.

51.     Defendants have a cruel and biased practice of verbally abusing members of the LGBTQ community. Because of this biased practice, Plaintiff suffered physical discomfort and emotional humiliation while working for Defendants. As a result, Plaintiff's act of quitting was in fact a constructive termination due to the hostile work environment and discrimination Plaintiff suffered throughout his employment.

52.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

53.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

54.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

55.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

57.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime.

58.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

59.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit.

60.     At all relevant times, Defendants had a policy and practice of unlawfully retaining Plaintiff and a subclass of FLSA Collective Plaintiffs' gratuities.

61.     At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and FLSA Collective Plaintiffs consumed the meals in question.

62.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs, and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs, should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

63.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, when Defendants knew or should had known such was due.

64.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

65.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

66.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages due to invalid tip credit, unlawful tip retentions and deductions, unpaid wages due to improperly deducted meal credits, plus an equal amount as liquidated damages.

67.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

68.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

69.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

70.     At all relevant times, Defendants engaged in a policy and practice of not compensating wages, including overtime, in direct violation of the NYLL.

71.     At all relevant times, Defendants engaged in a policy and practice of not compensating wages, including overtime due to timeshaving, in direct violation of the NYLL

72.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Tipped Subclass members the New York City minimum wage due to invalid tip credit.

73.     Defendants willfully violated the rights of Plaintiff and Tipped Subclass members by unlawfully retaining gratuities, in direct violation of the NYLL.

74.     Defendants failed to properly notify Plaintiff and the Tipped Subclass of their tips and tip pooling policies, in direct violation of the NYLL.

75.     Defendants willfully violated Plaintiff's and Class members' rights by improperly deducting meal credits from Plaintiff and Class members regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and Class members consumed the meals in question.

76.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip notices, at date of hiring and annually thereafter, as required under the NYLL.

77.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

78.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the NYLL.

79.     Due to Defendants' NYLL violations, Plaintiff, Class Members and the Tipped Subclass members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages, including overtime, due to an invalid tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities, unpaid wages for improperly deducted meal credits, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>

80.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

81.     The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of sexual orientation.

82.     Plaintiff was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

83.     Defendants operated a business that discriminated against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of his employment because of his sexual orientation in ways including, but not limited to:

      a.  Creating and fostering a hostile work environment based on Plaintiff's sexual orientation;

      b.  Verbally abusing Plaintiff with homophobic slurs;

      c.  Refusing to hire LGBTQ employees.

84.     Defendants conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

85.     As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

86.     Due to Defendants' violations under the NYSHRL, based on discrimination on the basis of sexual orientation, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

87.     Additionally, Defendants violated the NYSHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular harassment in the form of comments and behavior directed towards Plaintiff.

88.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to his constructive termination.

89.     As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")

90.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

91.     At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

92.     Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his sexual orientation in various ways, including but not limited to:

    a.   Creating and fostering a hostile work environment based on Plaintiff's sexual orientation;

    b.   Verbally abusing Plaintiff with homophobic slurs;

    c.   Refusing to hire LGBTQ employees.

93.    Defendants conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the NYCHRL.

94.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

95.    Due to Defendants' violations under the NYCHRL, based on discrimination on the basis of sexual orientation, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

96.    Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular discrimination in the form of comments and behavior directed towards Plaintiff.

97.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which lead to constructive termination.

98.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL, and the NYSHRL and the NYCHRL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.   An award of unpaid wages, including overtime under the FLSA and the NYLL;

d.   An award of unpaid wages, including overtime, due to timeshaving due under the FLSA and the NYLL;

e.   An award of unpaid wages due to invalid tip credit deductions under the NYLL;

f.   An award of unlawfully retained gratuities under the FLSA and the NYLL;

g.   An award of unpaid wages due to improperly deducted meal credits due under the FLSA and the NYLL;

h.   An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

i.   An award of backpay, compensatory damages, and punitive damages due under the NYCHRL;

j.   An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

k.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.      Designation of Plaintiff as Representative of the Tipped Subclass members;

m.      Designation of this action as a class action pursuant to F.R.C.P. 23;

n.      Designation of Plaintiff as Representative of the Class; and

o.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date:  May 19, 2022
       New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By:    /s/ *CK Lee*
       C.K. Lee, Esq.
       C.K. Lee (4086)
       Anne Seelig (3976)
       148 West 24th Street, Eight Floor
       New York, NY 10011
       Tel.: (212) 465-1180
       Fax: (212) 465-1181

       *Attorneys for Plaintiff, FLSA Collective*
       *Plaintiffs, and the Class*